This is a matter of Karen Lynn Hawkins against the Workers' Compensation Commission, 4090677. Counsel, please. May it please the court, counsel, I'm here on behalf of Karen Hawkins to call on this matter. This matter was tried on May 30, 2007 for arbitrator Neal and Peoramp. The issue on review in this case has to do with the medical bill from Roman Health. Brief summary, your honors, regarding the factual background. Counsel, I think we're fairly familiar with the factual background. In essence, are you asking for an extension of the collateral source rule to the Workers' Compensation Commission? I think it's an analogy in this case. First, I start with the application of the statute in the plain language. As I noted in my brief, first the arbitrator and commission cited to the wrong statute. They cited to AD2, which was amended on February 1, 2006. The applicable statute here is AJ1, which provides that an employer is entitled to a credit when they contribute in part or in whole to a health plan. In this case, the medical bill was paid by the petitioner's husband's health insurance through modern engineering, for which the apostolic home did not contribute in part or whole. So if you mechanically apply the statute in its plain meaning, you get to my result. This is an issue of first impression, though, however, is it not? I agree that it is. Can you provide us with any compelling legal reason or public policy reason to apply that doctrine to the Workers' Compensation Commission? Well, I can in analogy to the statute, because the way the statute is written, it says if it's contributed in part or whole by the employer. So it is obviously excluding other sources that may pay these bills. Illinois has long held that the collateral source rule prevents a third-party tort fees, or in this case I would provide the analogy that the employer in this case should not get the benefit of a plan that Mr. Hawkins and Mrs. Hawkins had paid for through her husband's insurance. Someone here is going to get a benefit of the bargain. And the long-held principle in Illinois is the tort feeser in a civil case doesn't get that benefit. Here, the statute makes it clear that the employer doesn't get that benefit either, because they have to contribute in whole or part to get that type of credit. In a tort setting, though, we do that because the underlying principle is that a tort feeser should never benefit from his tort. Workers' Compensation, it's a no-fault principle. We're not dealing with a tort feeser. We're not dealing with someone who is at fault. An accident has happened, and the purpose of the act is to make sure that the employee is made whole. The employee is made whole when they pay the $50,000. Well, but I would state, if you look at the statute here, 8-2-E in the amendment that came later takes out the language of contributed wholly or in part by the employer. Well, we understand. They made the statute broader. They made it broader. It's specific in this case here to something that they have to contribute to. The bill was introduced into evidence. There is no objection to that. The reasonableness is established by the fact that it was paid by the group health and paid by the work comp for the patient portion. So that part cannot be disputed. So if you look at the plain meaning of the statute, the bill is into evidence. They can't get a credit for that. The bill has to be awarded. But the question becomes, when you say the bill is in evidence and it's prima facie that it's reasonable because it was paid, it was not paid. $50,000 was paid. $70,000 was not paid. The payment of the $50,000 discharged the obligation, but no one paid $70,000. No, they did. Blue Cross Blue Shield in this case paid $77,240. Work comp paid $1,240. The employer on the eve of trial went to Blue Cross Blue Shield and said, we'll pay you $50,000 to satisfy your $77,000. So Blue Cross actually paid $77,000. Correct. It's not a situation where Blue Cross paid $50,000 and you've got a bill of $77,000. Correct. It's not like in Arthur v. Couture where you're talking about where the amount is different. I'm sorry. I'm confused as to the facts, so go ahead. Okay. So if you look at it, that amount was paid. Right. Because under the other cases, if it was paid at a lesser amount by the group health, then it would be my burden to show that the full amount is the reasonable charge. But here, since the $77,000 was paid, that has established that. Then the burden would shift to the employer in this case applying the statute to show that that amount is not a reasonable charge. So you're saying the payment of the bill is a prima facie evidence of the reasonableness of the bill, so to speak. Correct. And then if you apply the statute, they cannot get a credit under the statute application. So the bill has to be awarded. I agree, and I guess it's a judicial admission. I mean, they did pay the $50,000 in this case. They didn't put proof of payment in. I know that it was made because it couldn't have been done in that one day. So I'm not saying that she should get this windfall and they should pay $50,000 and a $77,000. But if one party here is going to get the benefit of the bargain when you apply the statute here, should it be Mrs. Hawkins who chose her physician and they didn't want her to go to that doctor? Should it be Mrs. Hawkins who paid for this other plan? Or should it be the employer here being able to cost shift their obligation in this case that they really didn't dispute to her husband's health insurance and then come in on the eve of the trial and then they're getting the $27,000 benefit of the bargain? So I want to be clear. You're telling us the record will reflect that Broman did not accept $50,000 for payment. Rather, they got a full $77,000 from Blue Cross Blue Shield. It was Blue Cross Blue Shield that accepted the benefit. Right. In fact, they got more. They got $77,000 and then they got another $1,240 from the work comp carrier because that was Mrs. Hawkins' obligation. Right, or deductible or out-of-pocket or uncovered expense. Counselor, what's your understanding of the effect and the purpose of the amendment to Section 8.2.E which applies to medical expenses incurred after February 1, 2006? What's the purpose of that? I mean, I think that the purpose there is to try and encourage people or allow people to get access to health care. So they're making it so they've broadened the statute in that situation to allow any group health payment, whether it's her husband's or it's the employer's or whoever it is. But that didn't apply at this time. That wouldn't negate the effect of the collateral source doctrine for medical expenses. Correct. Because what would have happened in this case if it had gone the way it should have, and this is why I talked about the common fund doctrine, in essence they got Blue Cross to reduce their amount by a third, which normally I would have done because the bill would have been awarded. Then I would have gone to Blue Cross Blue Shield because they had a separate contractual obligation with Blue Cross. Blue Cross couldn't reap the benefit of getting paid back without paying their portion of the legal fees. Then I would have paid them two-thirds of that amount, which would have been about $50,000. So the claimant here, as a practical matter, has no exposure in any of these bills, correct? That is true. I understand that. Your position is if there's going to be a windfall, very simply and bluntly put, it should go to the claimant, not the company. Right, for the reasons I've set forth here and the application of the statute because of the way it's worded, contributed wholly or in part by the employer. So you just want an award of $2,700? Correct. All right. Thank you. Good morning, Your Honors. May it please the Court, my name is Brian McGrady and I represent Apostolic Christian Home in this case. I think the facts of this case are important. This is a case of first impression. Look at the back in time, 2007. There's no dispute here that Ms. Hawkins needed a new brand of procedure that had never been done before, apparently in the Peoria area. Dr. Kattner is a neurosurgeon. He says she needs an artificial disc replacement. Never a dispute. The respondent got a Section 12 examination as a trite, sent it to a specialist in St. Louis who did these all the time and had experience in this field. Because artificial disc replacements had not been done by this physician, Dr. Kattner. A very good neurosurgeon, but this was a new procedure. He had never done one before. He admitted it. So there was concern in the respondent's part that this be done properly. That's why the Section 12 exam. Everyone agreed she needed this. The problem was the charges on this. This was a dispute about the amount of the charges. Dr. Kattner, if you read the transcript, deposition was taken and asked him. The original surgical charge of this procedure was $50,000. This is illustrative of the dispute over the charges here. $50,000 was his bill. Deposition was taken by a petitioner of Dr. Kattner. He said, I have no idea about bills. I've never done one of these before. The office manager's deposition was taken because she was the one who was supposed to have the expertise in this area. Deposition asked her, during deposition, how did you come up with this $50,000 fee? Just drawn out of the air. No response. By the time the deposition was taken, a year and a half after the procedure, that bill dropped from $50,000 to $70,000 because she said, well now, now, a year and a half after the fact, we have some actuarial input from Medicare, CMS, all these other people, as to what the charges were. What this illustrates is that this was a dispute about the reasonableness of charges. If you look at the commission's decision, it says very clearly, the reasonableness of the services were not a dispute. Everyone agreed this young lady needed this procedure. No dispute whatsoever. There was a dispute over the efficacy of the physicians, and since this was the first one, he had everything. But what does that have to do with Broman Health Care's bill? We're not talking about, he doesn't want to be paid for Guttner's bill. He wants to be paid for Broman Health Care. But it's illustrative of the fact. It may very well be illustrative, but there's a bill for $78,637, and he represents that the record suggests that Blue Cross and Blue Shield paid that bill. They did pay the bill. Okay. They paid the bill. Whose responsibility is it to reimburse them? It was, there's still a dispute as to the reasonableness of the charges because there's no evidence of that. Which doctor testified that the Broman Health Care bill was not reasonable? No doctor testified that it wasn't. So it was paid, so it's prima facie reasonable. Where's the evidence that it wasn't? In fact, this had never been done before, and Dr. Guttner had never performed this procedure at Broman Hospital before. Who can say that a bill is reasonable or unreasonable for services in the community other than a health care professional in that field? Who can say that? Well, the petitioner has the burden of proving that. He did. He introduced a paid bill, which is prima facie evidence of reasonable. But the reasonableness of the charges were still in dispute throughout the trial. If you look at the transcript and the commission and others don't say that. Just tell me what evidence there was that it was unreasonable. Which doctor testified to that? No doctor testified to that. Any hospital administrator testify to it? No. Then who testified to it, that it was not reasonable? No one testified that it was not reasonable. Then how could it be in dispute? We have a paid bill. The people who naturally disputed under the facts would be those people who are obligated to pay the bill. Well, you know who agreed that there was a dispute about that? The petitioner. In your transcript, if you look on page 357, I asked her, I said, isn't it true that all these charges were in dispute? And she admitted it. So that's in the transcript, and I direct your attention to page 357. Let's assume you're absolutely correct for the sake of the argument. The bill was in dispute. It's in dispute today. The problem is if you break it down, reduce it to the simplest legal terms and the proper procedure, would you agree, first of all, that under the law, the payment of the bill establishes prima facie evidence of its reasonableness? Correct? Yes. Okay. All right. It goes in that way. Then doesn't it shift? Where is the evidence that it's not reasonable? You're saying it's in dispute. What evidence? Doesn't the burden shift then to you to dispute the reasonableness by some type of evidence? In this case, the petitioner herself admitted that there was a dispute about this, and this is why this whole case came out. The fact that everybody admits there's a dispute has nothing to do with evidence to rebut. You just acknowledged and conceded payment of the bill is prima facie evidence of reasonableness. Who cares about who's disputing it? What evidence is there in the record to contradict that prima facie evidence? The respondent did not introduce any expert evidence. I've already said that. All right. So there isn't any? No. Other than the petitioner's admission. All right. Let's move on to the next question. The claimant acknowledges awarding the amount of the Broman Hospital bill very candidly would result in a windfall to her. Obviously, you'd acknowledge it. It's part of your argument probably. She shouldn't get a windfall. It's the sole purpose of this appeal. Give us a reason, a compelling legal reason or public policy reason why she shouldn't get the overage. Because in this case, the purpose of the act is to make sure that the bills are paid. As the arbitrator in the commission noted, she was fully held harmless from the bill in this case. And a 8-2e, which is a non sequitur in the commission's decision, reflects, though, the fact that the purpose is to have an individual held harmless and their bills paid. It is not a system to encourage people to engage in litigation to get an extra return of fees. That was what you're talking about here. If you awarded the petitioner $27,600, who gets it? Well, certainly she gets a windfall. And what does that do to medical rates? What does that do to expenses? What does that do to the availability of medical care if you're starting to award excess fees to individuals? And it creates an incentive for that kind of litigation to go forward, which is, why do we have a medical fee now? Why do we have a fixed medical fee? Because we're trying to make sure the medical expenses stay down and people have some certainty as to what the reimbursement is. You will not have this type of case again because you now have the medical fee schedule. You won't have this case. This is a blip that's in between the prior system and the new system. So you're saying, in essence, then, when you consider the fundamental underlying purposes of the act and public policy reasons, way against giving her the windfall. Exactly. And you're saying that's reflected in modifying the debt? You're saying that's reflected in subsequent modifications of the debt? Yes. Okay. But, you know, you're talking about all of this, about windfalls. Where's Blue Cross Blue Shield in this thing? They paid $77,000 of this bill. They didn't dispute it. They paid it. That's correct. And then they settled for $50. It seems to me, if you're going to point fingers at somebody in the health care industry, I would look at those insurance companies. Well, absolutely in this case. And let me address, you know, like the collateral source and the common fund doctrine here. It somehow is argued that we unjustly benefit. No. It would have been, you know, we don't benefit in any way. We paid the money. Regardless of what happened, we paid the money. So there's no, you know, common fund doctrine against us. That goes for third-party beneficiaries of the settlement. We didn't benefit from the settlement. We paid $50,000. We didn't benefit from that. Collateral source is an evidentiary issue. I mean, the arbitrator, the commissioner, the fact finder is here, not a jury. But in terms of Blue Cross Blue Shield, doesn't that also tell you what the reasonable value of the services were? Blue Cross Blue Shield says, well, sure, we'll take $50,000. You know, I wasn't involved in those negotiations, but, you know, that's the reasonable value, $50,000. If anyone gets it. The purpose of the act is to get the worker paid, but it's also to get him paid promptly. Right. Now, you refused to pay for this surgery. So his only option was to go, or her only option was to go with her husband's health care provider. You had the option of covering that surgery and negotiating the price, but you chose not to do so. So how are we going by the purpose of the act by, in effect, rewarding you for paying this late? Well, I would submit that's not what actually happened. I mean, you can infer that from the facts. I'm not saying that. But what happened in this case is that we agreed that she needed the surgery. We didn't refuse to pay for the surgery. We agreed she needed to pay for the surgery. One of it was medical care. You wanted to tell her who was supposed to perform it, or who wasn't supposed to perform it. Who was. I wouldn't say who, but who wasn't. Because this, and I, you know, I've been in the deposition with his daughter. You didn't want to cut her to perform it. You said he was incompetent. He was incompetent. No, what you said was he had never done it before. And therefore, I would say, would you want your mother to go for an experimental procedure with someone who had never done it before? Would you? No. I wouldn't want my wife to go or my kids to go. I wouldn't want them to go for the first person. So I think that was reasonable. We're trying to directly do the best care, not the first time care. Thank you, Your Honors. Just a couple of comments, Your Honors. In common language, you addressed his public policy purposes of the act analysis that he says militates against your position. Well, first I would say you have to apply the statute as it's written. When I talked earlier, it says wholly or contributed by plain language of the statute. So if I apply the statute, they didn't contribute wholly or in part. The bill's put into evidence. It's prima facie reasonable. They offered nothing to rebut this, but they say it's in dispute. If you just apply the statute, we don't even get to the public policy. But if I get to the windfall, and like I argued in the brief, it's not really a windfall. It's a benefit of the bargain. Somebody is, because Blue Cross did pay $77,000 here. They only paid $50,000 on that bill. They're getting the benefit of cost-shifting their costs to Blue Cross Blue Shield or a plan that they didn't even pay for. 8A only says the employer shall provide and pay for all necessary medical. When they gave Blue Cross Blue Shield $50,000, their argument is we paid for it. We paid for it. In fact, we made a cut of deals to pay for it is our bargain. It's not yours. We paid for it. You're responsible for nothing. But the credit portion for payments by group health is governed by Section 8J1, which talks about how that works. If it was Hawkins Health Insurance to the apostolic home, then they would have got a credit for the $77,000 and held her harmless. That's how it deals for that. But they're not claiming that. They didn't contribute in the whole or any part to that health care. They're not asking for a credit there. You're asking for payment under 8A, the old 8A. Correct. And then I put in the evidence of the bill that was unrefuted. And there's no evidence that another, that the other amount, there's no evidence that that amount is not reasonable. So I don't see how that can work. The reasonableness, you win on the reasonableness argument. The question is by paying $50,000, did they pay for all of her necessary medical care? No. The bill was $77,240. And the only way that they can get the appropriate credit is through the corollary part of Section 8, which is 8J1, that provides for that. Someone here is getting that benefit. And the question is, is it going to be an insurance company who's trying to direct her to a doctor because this guy hasn't done it before and go to St. Louis for a plan they didn't contribute to? Or is it going to be Mrs. Hawkins who is fortunate enough to have another insurance plan so she can get that treatment at that point? So I think that the statute is clear on this. And it is different now with the fee schedule and such. But that's not what applies. The amendments don't apply. The fee schedule doesn't apply. The law as it was at that time does. Thank you very much. Thank you, counsel. Of course, we'll take the matter under advisory.